IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICHOLAS WARNER JONES, a/k/a　　*
CHARLES JONES, #171-785
　　　　　Plaintiff　　　　　　　　　　　*

　　v.　　　　　　　　　　　　　　　　　*　Civil Action No. RDB-06-2316

RONALD HUTCHINSON, et al.,　　　　*
　　　　　Defendants
　　　　　　　　　　　　　　　　　******

**MEMORANDUM OPINION**

Defendants have moved for dismissal or summary judgment against Plaintiff Nicholas Warner Jones, a/ka/a Charles Jones. Paper No. 13. Plaintiff has filed a response. Paper No. 15. The issues in the motions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

**Background**

Plaintiff's Complaint focuses on events occurring in June through August of 2006. Plaintiff states that while housed on segregation at the Jessup Correctional Institution (JCI) he experienced nausea, involuntary muscle spasms, and headaches because correctional officers were urinating and putting rodent poison in his food. Paper No. 1. He also states that on August 5, 2006, Officer Ogbalu improperly wrote a rule infraction against him. *Id.* Plaintiff seeks declaratory and injunctive relief, including the removal of Defendants from their job, he also seeks compensatory and punitive damages. *Id.*

**Standard of Review**

**A.     Motion to Dismiss**

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U. S. 69, 73 (1989) *(*citing *Conley v. Gibson*, 355 U. S. 41, 45-46 (1957)). "While §1983 complaints that recite bare legal conclusions that are 'wholly devoid of facts' or that are not supported by specific facts pleaded, may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts - even if the factual assertions are equally consistent with a contrary conclusion - should survive a Rule 12(b)(6) motion to dismiss." *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted). "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true." *Finlator v. Powers,* 902 F.2d 1158, 1160 (4th Cir. 1990) (*citing Jenkins v. McKeithen*, 395 U. S. 411 (1969)).

**B.     Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Not every factual dispute will defeat the motion. As the Supreme Court has stated, [b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1993), but it must also abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986)).

**Analysis**

**A.     Exhaustion:**

The Court first examines Defendants' contention that Plaintiff's claim should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations, and his claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*,

3

286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a lawsuit for failure to exhaust, where a federal prisoner did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, a prisoner has ten calendar days to file an appeal with the Commission of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Defendants contend that Plaintiff did not fully pursue administrative remedies regarding his claims of food poisoning. Paper No. 13. The uncontroverted evidence shows that Plaintiff did file an ARP regarding his allegation of food poisoning directly to Division of Corrections Headquarters. Paper No. 1, Attachment.   Plaintiff's ARP was received on June 26, 2006, by the Division of

Corrections Headquarters and marked as an emergency request due to Plaintiff's allegations that he was being poisoned. Headquarters determined that the ARP should have been first reviewed by the Warden and returned the ARP to the Warden whereupon it was dismissed as untimely, despite Plaintiff having had submitted it within ten days of the alleged poisoning. Given the information, the Court cannot say that Plaintiff did not exhaust his "available" remedies or that Defendants did not frustrate his efforts at exhausting same. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000).

**B.     Conditions**

To the extent Plaintiff's Complaint can be construed as raising an Eighth Amendment claim, it fails. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297(1991) (quotations omitted). Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to

5

prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.), *cert. denied*, 114 S. Ct. 393 (1993).

The Court finds that Plaintiff's Complaint does not allege facts sufficient to state a cause of action based on unduly harsh conditions of confinement.  While Plaintiff provided facts suggesting that the prison officials acted with "deliberate indifference" to his health and safety, Plaintiff has not demonstrated that he suffered any physical harm.

Relevant medical records demonstrate that Plaintiff filled out three sick call request forms in June through August 2006.  On June 11, 2006, Plaintiff asked for a refill of his "stomach medicine" and complained of skin problems on his feet and hands.  Paper No. 13, Ex. 1. Plaintiff's July 18, 2006, sick call slip complained of not receiving a refill for his "anti-skin disease medication."  *Id*.  On August 17, 2006, Plaintiff complained of headaches and strep throat and attributed the headaches to nasal drip and congestion.  *Id.*    Accordingly, the Court finds that Plaintiff has not demonstrated any injury as a result of the alleged actions of Defendants.

**C.     Due Process**

To the extent Plaintiff challenges the conduct of an adjustment hearing which resulted from the rule infraction written by Officer Ogbolu on August 5, 2006, his claim fails.  In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits he is entitled to certain due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These procedural due process protections include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision.  *Wolff*, 418 U. S. at 564-571.

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

The record before the Court reveals that on August 5, 2006, Plaintiff asked Office Ogbolu to contact dietary so that Plaintiff could receive his breakfast tray. Another officer informed Ogbolu that Plaintiff took a regular breakfast tray and also requested a medical breakfast tray. When Ogbolu asked Plaintiff why he had taken a regular tray, he reported that Plaintiff responded, "That is not what I asked you to do bitch house nigger. If you don't get me another tray I make sure I put that shank in your black ass." Ogbolu issued Plaintiff a rule infraction for giving false information regarding his breakfast tray, disrespect and engaging in threatening language. On the same date, Plaintiff received notice of the rule infraction and his rights regarding the hearing. *Id.*, Ex. 2, p. 5. Plaintiff did not present any evidence during his August 25, 2006, adjustment hearing. Rather, he claimed that the entire adjustment procedure was illegal. Plaintiff was found guilty of using threatening language and being disrespectful and received 150 days of disciplinary segregation. The Assistant Warden affirmed the hearing officer's decision. *Id.*, Ex. 2.

In light of the facts outlined in the preceding paragraph, the undersigned finds that Plaintiff's due process rights were not violated. Plainly, Plaintiff was afforded the procedural due process required under the law. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). Based on evidence presented at the adjustment hearing, the AHO found that Plaintiff threatened the correctional officer. As such, Plaintiff's substantive due process rights were met in that the disciplinary hearing decision was unquestionably based upon "some evidence" submitted before the AHO. *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. at 455.

**D.     Supervisory Liability**

Plaintiff has alleged no personal involvement by Commissioners of Correction Frank Sizer and John Roley, or Warden James D. Smith  Rather, Plaintiff contends in his Complaint that these individuals are properly named because they exercise supervisory authority over other named Defendants.[1] Paper No. 1.

In order for supervisory liability to exist in a §1983 action it must be established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

To the extent Plaintiff is claiming that these officials were indifferent to actions taken by staff, he has failed to state a claim. Deliberate indifference is more than negligence. As one court explained:

> Generally, a failure to supervise gives rise to a §1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate §1983 liability.

*Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (citations and footnote omitted).

Plaintiff has not pointed to any specific action or inaction on the part of Defendants Sizer,

---

[1] Such liability would be premised on the legal doctrine of respondent superior. The doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. §1983. *See Monell v. New York Dept. of Social Services,* 436 U.S. 658, 691 (1978).

Roley and Smith. He has not alleged facts from which it could be inferred that they were aware his constitutional rights were being violated or that the failed to take corrective action. There is no basis for liability on the part of these Defendants.

## Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss and in the Alternative for Summary Judgment shall be granted. A separate Order follows.

| | |
|---|---|
| March 21, 2007 | /s/ |
| (Date) | RICHARD D. BENNETT |
| | UNITED STATES DISTRICT JUDGE |